585 A.2d 1112

**COMMONWEALTH of Pennsylvania**

v.

**Bruce DIEHL, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1990.

Filed Feb. 1, 1991.

14

Michael Dennehy, Danville, for appellant.

Scott W. Naus, Dist. Atty., Bloomsburg, for Com., appellee.

Before MONTEMURO, TAMILIA and HOFFMAN, JJ.

MONTEMURO, Judge:

This case arises from the appeal of appellant, Bruce Diehl, who was adjudged guilty by jury, on May 11, 1988, of criminal conspiracy to commit theft and burglary.[1]  Appellant was sentenced to seven to twenty-three months in the

1.  18 Pa.C.S.A. §§ 903(a)(1) and (2), respectively.

Columbia County jail; and, it is from this judgment of sentence that the instant appeal arises.

The pertinent facts of this case revolve around the burglary of a Firestone store, located in Bloomsburg, Pennsylvania, on the evening of February 1, 1988. Pursuant to the testimony of two witnesses and co-conspirators to the crime, Michael Vial and Richard Barnes, evidence was introduced which showed that, on the evening in question, appellant, Vial and Barnes were driving around the town of Bloomsburg when Vial and Barnes decided, pursuant to a conversation held in the presence of appellant, to burglarize the Firestone store. Appellant, the driver of the car, parked the car near the shopping plaza where the Firestone store was located and waited while Vial and Barnes broke through the rear window of the store. Once inside, Vial and Barnes opened the cash register, removed $20.15 in change and took two alternators located in the store. Upon exiting the store, appellant drove Vial and Barnes from the scene. Barnes kept the cash and Vial took one of the two alternators. The other alternator was allegedly left in the car with appellant. Appellant did not testify at trial; and, neither Vial nor Barnes were charged with the burglary, having entered into a plea agreement with the Commonwealth prior to the time of appellant's trial.

Based upon the above facts, appellant raises three (3) issues for review:

I. WHETHER THERE WAS SUFFICIENT EVIDENCE OF AN AGREEMENT AMONG APPELLANT, VIAL AND BARNES TO SUPPORT APPELLANT'S CONVICTIONS OF CONSPIRACY TO COMMIT THEFT AND BURGLARY;

II. WHETHER THE DISTRICT ATTORNEY'S COMMENT DURING CLOSING ARGUMENT, WHICH STATED THAT THERE WAS "NO CONTRARY EVIDENCE", AMOUNTS TO REVERSIBLE ERROR; AND,

III. WHETHER THE COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT THE COMMONWEALTH'S TWO WITNESSES WERE "PAID INFORM-

ERS", TESTIFYING UNDER A PRIOR PLEA AGREE-
MENT.

For the following reasons, we affirm the judgment of
sentence imposed.

■    With regard to appellant's contention that there was
insufficient evidence to support his conviction of conspiracy,
our scope of review is limited to viewing the evidence in the
light most favorable to the Commonwealth, drawing all
proper inferences from the evidence in such light, and
determining whether the jury could reasonably have found
that all the elements of the crime were established beyond a
reasonable doubt. *Commonwealth v. Edwards*, 521 Pa.
134, 555 A.2d 818 (1989). We agree with the opinion of the
trial court that there was sufficient evidence to find appel-
lant guilty of conspiracy to commit theft and burglary.

To convict a person of conspiracy,

... [a] factfinder must conclude that he [defendant]
reached an agreement with his co-conspirator to commit
the crime. *Commonwealth v. Graves*, 316 Pa.Super. 484,
463 A.2d 467 (1983). Direct proof of the corrupt agree-
ment, however, is not necessary. *Commonwealth v.
Brown*, 351 Pa.Super. 119, 505 A.2d 295 (1986). "An
explicit or formal agreement to commit crimes can sel-
dom, if ever, be proved and it need not be, for proof of a
criminal partnership is almost invariably extracted from
the circumstances that attend its activities." *Common-
wealth v. Campbell*, 353 Pa.Super. 178, 509 A.2d 394
(1986) *quoting Commonwealth v. Strantz*, 328 Pa. 33, 43,
195 A. 75, 80 (1937) ...

*Commonwealth v. Lyons*, 390 Pa.Super. 464, 472, 568 A.2d
1266 (1989), *citing Commonwealth v. Anderson*, 381 Pa.Su-
per. 1, 15–16, 552 A.2d 1064, 1071 (1988).

In the instant case, the Commonwealth met its burden of
proof by introducing circumstantial evidence of an illicit
agreement among appellant, Vial and Barnes. The evi-
dence, presented by the two witnesses and alleged co-con-
spirators, shows that Vial and Barnes were engaged in a

conversation, concerning the burglary of the Firestone store, while in the presence of appellant. Appellant subsequently drove Vial and Barnes to the Firestone store and waited in the car while the two co-conspirators broke into the store. After exiting the store, Vial and Barnes re-entered the car which appellant was driving; and, thereafter, appellant drove Vial and Barnes from the scene of the crime, with the illegal merchandise present in appellant's car. This evidence, viewed in the light most favorable to the Commonwealth, leads to the inference that appellant was in illicit agreement with the two co-conspirators. Appellant's reliance upon *Commonwealth v. Finley*, 477 Pa. 382, 383 A.2d 1259 (1978) is, therefore, incorrect.

In *Finley*, our Supreme Court reviewed the circumstantial evidence presented by the Commonwealth and found that evidence insufficient to convict appellant of murder, burglary and criminal conspiracy. The Commonwealth had introduced testimony, at trial, of only one (1) witness and alleged co-conspirator, who testified that: 1) he was not present in appellant's car at any time prior to the car's arrival at the scene of the crime; 2) he was not sure if appellant was waiting prior to his arrival at the scene; and, 3) he was not certain if appellant was driving upon leaving the scene of the crime. After reviewing this evidence, the Court found that it was mere speculation and guesswork to infer that appellant had any knowledge of the common plan among the occupants of appellant's car and the witness to commit the crimes involved, or that appellant in any way aided or abetted the commission of the common plan. Therefore, the Court concluded that appellant's mere presence at the scene was insufficient to find him guilty of conspiracy. *Id.*, 477 Pa. at 390, 383 A.2d at 1263.

In the instant case, there is no possibility of guesswork and speculation as the circumstantial evidence presented by the Commonwealth herein clearly raises the inference that appellant had knowledge of the common plan of the two co-conspirators and aided and abetted that plan by driving the two co-conspirators to and from the scene of the crime.

See discussion above. Therefore, appellant's first issue is meritless.

■ Appellant also argues that the trial court erred in denying appellant a mistrial when the district attorney commented, in closing, that there was no contrary evidence which would show that appellant did not commit the crime.[2] We also find this contention to be without merit.

■ It is certainly true that a defendant has an absolute right to refrain from testifying. It is further true that neither counsel may make reference to the fact that a defendant has refused to testify on his own behalf. As stated in 42 Pa.C.S.A. § 5941,

> (a) General rule.—Except defendants actually upon trial in a criminal proceeding, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to incriminate him; nor may the neglect or refusal of any defendant, actually upon trial in a criminal proceeding, to offer himself as a witness, be treated as creating any presumption against him, or be adversely referred to by court or counsel during the trial.

42 Pa.C.S.A., § 5941(a). If the Commonwealth in any way violates this rule, it bears the burden of establishing that any error it made is harmless beyond a reasonable doubt. *Commonwealth v. Davis,* 452 Pa. 171, 177, 305 A.2d 715, 719 (1973), *citing Chapman v. California,* 386 U.S. 18, 26, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). It is then our duty to determine whether there is any reasonable possibility that the error might have contributed to appellant's conviction. *Commonwealth v. Davis, supra, citing Chapman v. California, supra.* And, even if there is a "reasonable possibility" that the error contributed to conviction, the error can be held harmless if the " 'properly admitted

---

**2.** Although the notes of testimony do not contain the transcribed notes of counsels' closing arguments, both the trial court and all parties of record admit that the district attorney utilized certain general language to this effect. We, therefore, address this issue.

evidence of guilt is so overwhelming, and the prejudicial effect of the ... [constitutional error] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the ... [constitutional error] was harmless error.' " *Commonwealth v. Davis, supra, citing Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972). *See also Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1981).

Applying the reasoning set forth in *Commonwealth v. Davis* to the facts of this case, we find that there is no reasonable possibility that the Commonwealth's comment contributed to the conviction of appellant. Further, assuming arguendo that there was a reasonable possibility that the error contributed to appellant's conviction, upon applying the exception as enunciated in *Davis,* we find that the limited and vague language utilized by the Commonwealth was insignificant in comparison to the properly admitted evidence. As the Commonwealth's limited reference to "no contrary evidence" does not rise to the level of prejudice required pursuant to the guidelines and decision in *Commonwealth v. Davis,* the error committed herein was harmless.

■ Finally, we approach appellant's third contention. Appellant alleges that the trial court erred in failing to give an instruction to the jury encompassing the standard jury instruction entitled, "Commonwealth Witness A Paid Informer". This standard instruction states that:

In deciding whether or not to believe _____ you should be guided by the following principles which apply specially to the testimony of a paid informer:

You should examine the testimony of _____ closely to determine if it is colored in such a way so as to implicate the defendant falsely in furtherance of _____'s own self-interest. This is because _____ testified for pay. Therefore, although you may convict the defendant on the

testimony of ..... standing alone, you must consider .....'s interest in deciding whether or not to believe him. Pa.SSJI [Crim.] 4.06.

This issue obviously revolves around whether the two co-conspirators were "paid informers", so as to fall within the provisions of the above instruction. The trial judge, in instructing the jury, included a general charge concerning the credibility of the two witnesses based upon their criminal records. He further included an instruction concerning the corrupt source of the two witnesses' testimony based upon their roles as accomplices to appellant and the crime committed. In responding to the request of appellant to include the "paid informer" charge, the trial judge concluded that the charge was not applicable as the "... co-defendants had pleaded guilty and served their sentences prior to testifying against the Defendant. Therefore, a charge on the question of credibility because of a plea agreement was not warranted in this instance." *See* Opinion of Trial Court, December 15, 1988, p. 5. We agree with the trial court's conclusion that the "paid informer" instruction was not applicable. However, we reach this conclusion based upon the fact that the two co-conspirators do not fall within the definition of "paid informer".

■ It must be noted that this case is one of first impression. In enunciating the proper standard of review, we start with the legal proposition that the Standard Jury Instructions are only guides to the trial judge. He or she is free to deviate from them or ignore them entirely. *Mackowick v. Westinghouse Elec. Corp.*, 373 Pa.Super. 434, 541 A.2d 749 (1988), *aff'd.* 575 A.2d 100. Further, "[a]s a general rule, '[T]he refusal to give a proper instruction requested by a party is a ground for a new trial only if the substance thereof has not otherwise been covered by the trial court's general charge.' " *Commonwealth v. LaMassa*, 367 Pa.Super. 54, 58, 532 A.2d 450, 452 (1987), *citing Werner v. Quality Service Oil Co., Inc.*, 337 Pa.Super. 264, 269, 486 A.2d 1009, 1011 (1984) (citation omitted). And, "[i]n viewing jury instructions for reversible error, we must

read the charge as a whole. Error cannot be predicated on isolated excerpts of the charge; it is the general effect that controls." *Commonwealth v. Mason*, 358 Pa.Super. 562, 580, 518 A.2d 282, 291 (1986), *alloc. den. in* 516 Pa. 640, 533 A.2d 711.

Appellant seeks to argue that the two witnesses in the Commonwealth's case-in-chief were "paid informers" as they entered a plea agreement, prior to testifying against appellant, which granted them immunity from prosecution on the burglary charge and which reduced their sentences for prior offenses committed. Appellant cites various federal cases in support of this argument.

Initially cited is *Fletcher v. United States*, 158 F.2d 321 (D.C.Cir.1946), wherein the government utilized the testimony of an informer, who was paid $6 dollars a day to "turn up" cases involving violations of narcotics laws. Also cited is *United States v. Daniels*, 191 F.Supp. 129 (E.D.Pa.1961), wherein the government utilized a drug addict/informer to entice the defendant into purchasing narcotics. The United States District Court for the Eastern District determined that where the government utilizes testimony of paid drug informers and addicts, it is within the jury's sole discretion to judge the credibility of such testimony, in light of the informer's narcotics conviction and his general character. *Id.* at 131. All other federal case law in this area involves informers who, prior to the commission of any crime, were paid, either with money or with promises of reduced charges or sentences, to entice the various defendants to commit the crimes. *See On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); *Amaya v. United States*, 373 F.2d 197 (10th Cir.1967); *Government of Virgin Islands v. Hendricks*, 476 F.2d 776 (3rd Cir.1973). No federal or state case law has ever broadened this instruction to include two witnesses who consent to a plea agreement *after* the crime. Therefore, we will not broaden the limited scope of the standard instruction to encompass appellant's argument herein.

Further, in viewing the jury charge as a whole, the substance of appellant's requested instruction was contained in the general jury instructions given.

In charging the jury on the credibility of the two co-conspirators, the trial judge stated that:

[t]he only purpose for which you may consider the evidence of prior convictions in deciding whether or not you believe all or a part of their testimony as given in this particular case, and in so deciding you may consider the types of crimes that they admitted they committed, how long ago the crimes were committed, how they related to the crimes in question and how they would affect the likelihood that the witnesses, Barnes and Vial, testified truthfully in this case.

(N.T., May 11, 1989, p. 65). Further, the trial judge instructed the jury that:

[s]ince both Michael Vial and Richard Barnes were accomplices in this case, to the Defendant alleged accomplices at least, their testimony, that is of Michael Vial and Richard Barnes, has to be judged by you as Jurors by certain special cautionary rules, and because experience shows us that an accomplice, when caught, will often try to place the blame falsely on someone else, *he may testify falsely in the hope of obtaining favorable treatment or for some other corrupt or wicked motive.*

(N.T., May 11, 1989, p. 65) (emphasis added). These instructions adequately covered the character, veracity and possible interests of the two co-conspirators in testifying against appellant. Therefore, we will not reverse the decision of the trial court.[3]

---

3. Further support for this conclusion is found in the evidence introduced to the jury on cross-examination. This evidence showed that both co-conspirators had committed various other crimes prior to the instant matter. Appellant's counsel cross-examined them extensively on their records. Appellant's counsel further questioned them as to their purposes in testifying against appellant, to which both witnesses admitted that they had entered their respective plea agreements in return for testifying against appellant and various other defendants. (N.T., May 11, 1989, pp. 20–21 and 31–32). The jury was, therefore,

Based upon the foregoing reasons, judgment of sentence is affirmed.

made fully aware of the possibility that the two co-conspirators held an interest in testifying against appellant.